1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN ARCHER, | Case No. 2: 17-cv-04822-JVS (MAA) |
| Plaintiff, | **MEMORANDUM DECISION AND** |
| v. | **ORDER DISMISSING FOURTH** |
| CCI PIXLEY, *et al.*, | **AMENDED COMPLAINT WITH** |
| | **LEAVE TO AMEND** |
| Defendants. | |

## I.   INTRODUCTION

On June 30, 2017, Plaintiff John Archer ("Plaintiff"), an inmate at California State Prison – Los Angeles County ("CSP-LAC"), in Lancaster, California, proceeding pro se, filed a civil Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983").  (ECF No. 1.)  Plaintiff filed a First Amended Complaint on November 20, 2017 (ECF No. 17), a Second Amended Complaint on December 18, 2017 (ECF No. 22), and a Third Amended Complaint on July 2, 2018 (ECF No. 42).  This case was transferred to the calendar of Magistrate Judge Maria A. Audero on June 11, 2018.  (ECF No. 39.)

Before the Court is Plaintiff's Fourth Amended Complaint ("4AC"), filed on November 6, 2018.  (ECF No. 48.)  The Court screened the 4AC as prescribed by

28 U.S.C. § 1915A.  For the reasons stated below, the 4AC is **DISMISSED WITH LEAVE TO AMEND**.  Plaintiff is **ORDERED** within thirty days after the date of this Order to either: (1) file a Fifth Amended Complaint ("5AC"), or (2) advise the Court that Plaintiff does not intend to file a 5AC.

## II.     ALLEGATIONS IN THE 4AC

The 4AC is filed against the following Defendants: (1) Correctional Counselor I Pixley, (2) Mailroom Supervisor Captain Williams, (3) Associate Warden M.A. Buechter, (4) Inmate Appeals Technician G. Stratman, and (5) the California Department of Corrections and Rehabilitations ("CDCR") (each a "Defendant," collectively "Defendants," and collectively without CDCR the "Individual Defendants").  (ECF No. 48, at 4-5.)[1]

Plaintiff alleges that on November 25, 2014 and December 17, 2014, Defendant Pixley willfully conspired with inmates to commit theft and fraud to withdraw funds from Plaintiff's trust account in increments of $150, $200, and $400, which were sent to people Plaintiff did not know.  (*Id.* at 5-6.)  Plaintiff contends that money cannot be withdrawn from inmate trust accounts without approval by the correctional counselor of an inmate's housing unit.  (*Id.* at 6.)  Defendant Pixley is assigned to housing unit 1 of the D-yard facility, while Plaintiff always has been assigned to housing unit 2 of the D-yard facility.  (*Id.*)  Plaintiff alleges that because he is not assigned to housing unit 1, he has never interacted with Defendant Pixley.  (*Id.*)  Plaintiff contends that Defendant Pixley allowed an inmate to impersonate Plaintiff without requiring surrender of his identification card or following regulations or procedures.  (*Id.*)

Plaintiff filed a 602 appeal regarding Defendant Pixley's approval of the withdrawals from Plaintiff's trust account.  (*Id.*)  Plaintiff's appeal was granted

---

[1] All citations to the 4AC reference the page numbers generated by ECF.

partially at the first level. (*Id.*) Unsatisfied with the relief granted, Plaintiff filed a second-level appeal for full reimbursement of all amounts over $100; however, all amounts higher than $100 require third-level approval. (*Id.* at 7.) Plaintiff alleges that his second-level appeal was fully granted, but the appeal office did not return the complete appeal to Plaintiff. (*Id.*) Plaintiff's third-level appeal was denied for lack of completeness, and is now time-barred. (*Id.*)

On July 5, 2017, the mail room received a contraband package for Plaintiff containing a Visa credit card, a "Rush" card, and a "vault" card. (*Id.*) Upon notice of disallowance, Plaintiff provided an addressed postage-paid envelope to return the cards to the sender. (*Id.* at 7-8.) The sender advised Plaintiff that the return envelope was empty. (*Id.* at 8.) Plaintiff alleges that the "mailroom" stole his card, and that they denied having the Visa and "Rush" cards but admitted to having the "vault" card. (*Id.*) Plaintiff alleges that the cards came with PIN and activation numbers and thus were easy to steal. (*Id.*)

Based on the foregoing, Plaintiff asserts the following five claims for relief:

Claim 1. Plaintiff alleges that Defendant Pixley acted with deliberate indifference and malicious disregard on November 25, 2014, December 17, 2014, and October 19, 2015 by allowing an inmate to impersonate Plaintiff and embezzle money from his trust account. (*Id.* at 8-9.)

Claim 2. Plaintiff contends that Defendant Buechter acted with deliberate indifference and callous disregard in his supervisory duties to maintain security over the information in inmate accounts, so that such information does not become public and inmates do not fall victim to identity fraud. (*Id.* at 9.)

Claim 3. Plaintiff alleges that Defendant CDCR acted with deliberate indifference and callous disregard on November 25, 2014, December 17, 2014, and October 19, 2015 over "supervision of procedural information when approving inmate trust" withdrawals, to prevent fraudulent withdrawals from inmate trust accounts. (*Id.*)

3

1    Claim 4.  Plaintiff contends that Defendant Stratman by his deliberate

2    indifference and callous disregard caused part of Plaintiff's 602 appeal to be lost,

3    thereby thwarting Plaintiff's ability to seek third level review of his appeal.  (*Id.* at

4    10.)

5    Claim 5.  Plaintiff contends that Defendant Williams by his deliberate

6    indifference and callous disregard allowed mailroom staff to steal Plaintiff's cards.

7    (*Id.*)

8    Plaintiff seeks the following remedies: (1) compensatory damages, comprised

9    of $1,500 for mental disdain and suffering, and causation damages in an amount

10   deemed just and equitable; (2) $80,000 in punitive damages; (3) special damages

11   for attorneys' fees and expenses; and (4) declaratory and injunctive relief in the

12   form of a declaration that Plaintiff has: (a) due process and equal protection rights

13   to be protected from unprovoked and reasonably foreseeable identity fraud and theft

14   from his trust account, (b) a due process right not to have his personal information

15   disclosed to the public for identity theft due to the staff's failure to follow mandated

16   policy and procedures, and (c) an Eighth Amendment right not to suffer conspiracy

17   to retaliate.  (*Id.* at 11-15.)

18

19   **III.   STANDARD OF REVIEW**

20   Federal courts must conduct a preliminary screening of any case in which a

21   prisoner seeks redress from a governmental entity or officer or employee of a

22   governmental entity.  28 U.S.C. § 1915A.  The court must identify cognizable

23   claims and dismiss any complaint, or any portion thereof, that is: "(1) frivolous,

24   malicious, or fails to state a claim upon which relief may be granted; or (2) seeks

25   monetary relief from a defendant who is immune from such relief."  28 U.S.C.

26   § 1915A(b).

27   When screening a complaint to determine whether it fails to state a claim

28   upon which relief can be granted, courts apply the Federal Rule of Civil Procedure

4

1  12(b)(6) ("Rule 12(b)(6)") standard. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121
2  (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A).
3  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a
4  cognizable legal theory or sufficient facts to support a cognizable legal theory."
5  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013)
6  (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.
7  2008)).

8      Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure
9  8(a) ("Rule 8"), "which requires not only 'fair notice of the nature of the claim, but
10  also grounds on which the claim rests.'" *See Li v. Kerry*, 710 F.3d 995, 998 (9th
11  Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007)). In
12  reviewing a motion to dismiss, the court will accept the plaintiff's factual
13  allegations as true and view them in the light most favorable to the plaintiff. *Park
14  v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Although "detailed factual
15  allegations" are not required, "[t]hreadbare recitals of the elements of a cause of
16  action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*,
17  556 U.S. 662, 678 (2009). "Conclusory allegations of law . . . are insufficient to
18  defeat a motion to dismiss." *Park*, 851 F.3d at 918 (alteration in original) (quoting
19  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001)). Rather, a complaint
20  must "contain sufficient factual matter, accepted as true, to 'state a claim to relief
21  that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at
22  570). "A claim has facial plausibility when the plaintiff pleads factual content that
23  allows the court to draw the reasonable inference that the defendant is liable for the
24  misconduct alleged." *Iqbal*, 556 U.S. at 663. "If there are two alternative
25  explanations, one advanced by defendant and the other advanced by plaintiff, both
26  of which are plausible, plaintiff's complaint survives a motion to dismiss under
27  Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Plaintiff's
28  //

complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." *Id.*

Where a plaintiff is pro se, particularly in civil rights cases, courts should construe pleadings liberally and afford the plaintiff any benefit of the doubt. *Wilhelm*, 680 F.3d at 1121. "[B]efore dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). A court should grant a pro se plaintiff leave to amend a defective complaint "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar*, 698 F.3d at 1212 (quoting *Shucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam)).

## IV.  DISCUSSION

### A.  The 4AC Violates Federal Rule of Civil Procedure 8.

Rule 8 requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 8 may be violated when a pleading "says *too little*," and "when a pleading says *too much*." *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013).

The 4AC violates Rule 8 because (1) none of Plaintiff's five claims for relief identifies the nature of the legal claim he is asserting, and (2) the 4AC lacks specific factual allegations regarding Defendants' acts or omissions. Without more specific information, it would be difficult for Defendants to understand and respond to Plaintiff's complaint. *See Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011). The Court previously advised Plaintiff

6

that the 4AC should conform with Rule 8. (*See* ECF No. 45.) Any amended complaint must comply with Rule 8 or face dismissal without leave to amend.

### B. The CDCR is Immune From Suits in Federal Court.

The 4AC names CDCR as a Defendant. (ECF No. 48, at 5.) As an agency of the State of California, the CDCR is not a "person" subject to liability under Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In addition, the Eleventh Amendment protects state agencies from suits in federal court, absent waiver by the state or Congressional abrogation. *See Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, and the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity." *Id.* (quoting *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999)). The Eleventh Amendment "jurisdictional bar applies regardless of the nature of relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984); *see also Brown*, 554 F.3d at 752 ("[U]nder the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court.") (quoting *Dittman*, 191 F.3d at 1025). For these reasons, the claim against the CDCR is improper, and should be omitted from any amended complaint.

### C. The 4AC Does Not State a Claim Against the Individual Defendants in Their Official Capacities for Money Damages.

The 4AC does not specify whether the Individual Defendants are sued in their individual and/or official capacities. (ECF No. 48, at 4-5.) The Court analyzes whether the 4AC states claims against the Individual Defendants in their official capacities, and concludes that it does not do so for money damages.

//

7

A suit against a defendant in his/her individual capacity "seek[s] to impose personal liability upon a government official for actions he takes under color of state law . . . . Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). The 4AC alleges that the Individual Defendants are all employees at CSP-LAC, which is maintained and operated by Defendant CDCR, a state agency. (ECF No. 5, at 4-5.) As such, any official capacity claims against the Individual Defendants properly are treated as claims against the State of California. *See Leer v. Murphy*, 844 F.2d 628, 632 (9th Cir. 1998) (holding that a lawsuit against state prison officials in their official capacities was a lawsuit against the state).

California is not a "person" subject to Section 1983, and the Eleventh Amendment bars damages actions against state officials in their official capacity. *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Nat. Res. Def. Council v. Cal. DOT*, 96 F.3d 420, 421 (9th Cir. 1996) ("State immunity extends to state agencies and to state officers, who act on behalf of the state and can therefore assert the state's sovereign immunity."). State officials sued in their official capacity are considered "persons" when they are sued for prospective declaratory or injunctive relief under Section 1983; the Eleventh Amendment does not bar such claims. *Flint*, 488 F.3d at 825; *Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999) ("*Ex Parte Young* provided a narrow exception to Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief against unconstitutional actions taken by state officers in their official capacities.")

In any amended complaint, Plaintiff must specify the capacity in which each Individual Defendant is sued. If the Individual Defendants are sued in their official capacities, they only can be sued for prospective declaratory and injunctive relief, not monetary damages.

**D.    The 4AC Does Not State a Section 1983 Claim.**

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in original).  The purpose of Section 1983 is "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.*  To state a claim under Section 1983, a plaintiff must allege: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 851 n.9 (9th Cir. 1984) (Section 1983 "enforces federal statutory rights only against direct violations of the federal statute in question.").

The 4AC does not specify the Constitutional or federal rights violated by Defendants in each claim.  In the request for relief, Plaintiff requests a declaration that he has Eighth Amendment, due process, and equal protection rights.  (ECF No. 48, at 14-15.)  As such, the Court examines the allegations in the 4AC in light of the Eighth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment, and concludes that the 4AC does not state a violation of those federal rights.  In addition, as the 4AC alleges that Defendants engaged in a conspiracy (*see, e.g., id.* at 2), the Court also analyzes whether the 4AC states a claim for conspiracy under Section 1983, and concludes that it does not.

**1.    The 4AC Does Not State an Eighth Amendment Claim.**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 832

(1994). The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ,' against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). Although the Eighth Amendment does not mandate that prisons be comfortable (*Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), or that they provide every amenity that a prisoner might find desirable (*Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)), it also will not permit inhumane prison conditions (*Farmer*, 511 U.S. at 832). Prison officials must provide prisoners with "basic human needs" and the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

A prison official violates the Eighth Amendment when two requirements are met: (1) objectively, the official's act or omission is sufficiently serious such that it results in the denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the prison official acted with "deliberate indifference" to an inmate's health or safety (i.e., "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). *Farmer*, 511 U.S. at 834, 837.

The 4AC does not satisfy the objective prong because it does not identify the loss or denial of "the minimal civilized measure of life's necessities." *See id.* Plaintiff alleges that he lost money, information in his prison trust account, pages of his administrative appeal, and two credit cards. "Basic human needs" protected by the Eighth Amendment include "food, clothing, shelter, sanitation, medical care, and personal safety" (*Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986)), warmth and exercise (*Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Plaintiff's alleged deprivations do not objectively constitute "the minimal civilized measure of life's necessities" or "basic human needs." *See Rhodes*, 452 U.S. at 347.

//

10

The 4AC also does not satisfy the subjective prong. Other than conclusory statements that Defendants acted with "deliberate indifference and callous disregard," there are no specific factual allegations to support an inference that any Defendant subjectively acted with deliberate indifference. The 4AC only contains specific factual allegations with respect to Defendant Pixley. However, there are no allegations by which it could be inferred that Defendant Pixley (or any other Defendant) "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

To the extent that Plaintiff seeks to impose Section 1983 liability on the Defendants premised on the acts of their respective subordinates, such a claim is not cognizable. Supervisory personnel generally are not liable under Section 1983 on any theory of *respondeat superior* or vicarious liability in the absence of a state law imposing such liability. *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). A supervisor "is only liable for his or her own misconduct, and is not "accountable for the misdeeds of [his or her] agents." *Iqbal*, 556 U.S. at 677. Mere knowledge of a subordinate's alleged misconduct is insufficient. *Id.*

Notwithstanding, where the applicable standard is "deliberate indifference" (such as for an Eighth Amendment claim), a plaintiff can state a claim for supervisory liability based upon the "supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr*, 652 F.3d at 1207. "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id.* (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Rodriguez v. County of Los*

11

*Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1207-08) (alterations in original). "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1208) (alteration in original). Specifically, supervisory liability may be alleged based on acquiescence with respect to a deficient policy that is the "moving force" behind a constitutional violation. *See Starr*, 652 F.3d at 1208; *see also Hansen*, 885 F.2d at 646 ("Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (internal quotations omitted)).

Here, the 4AC does not contain any specific factual allegations that the Defendants participated in any alleged constitutional violations. Rather, the 4AC includes only general allegations that Defendants acted with "deliberate indifference and callous disregard." (ECF No. 48, at 9-10.) Plaintiff's conclusory allegations do not satisfy his pleading obligation to set forth either (1) facts plausibly alleging Defendants' personal involvement in any constitutional deprivation, or (2) facts plausibly alleging a sufficient causal connection between Defendants and a constitutional violation. If Plaintiff files an amended complaint, he must correct these deficiencies or risk dismissal without leave to amend.

//
//
//
//

### 2.    The 4AC Does Not State a Fourteenth Amendment Procedural Due Process Claim.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits the government from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1.  To plead a procedural due process violation, a plaintiff must allege two elements: (1) the plaintiff has a "liberty or property interest which has been interfered with by the State"; and (2) the procedures employed to deprive the plaintiff of liberty or property were constitutionally insufficient. *Ky. Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

#### a.    Protected Interest.

The 4AC appears to assert four protectable interests: (i) the funds in Plaintiff's prison trust account (Claim 1); (ii) the private information about his prison trust account (Claim 2); (iii) his administrative appeal (Claim 4); and (iv) the credit cards (Claim 5).  Of these, only the funds in Plaintiff's prison trust account constitute an interest protected by the Due Process Clause.

Prison Trust Account.  In Claims 1 and 3, Plaintiff alleges that Defendant Pixley (Claim 1) and the CDCR (Claim 3), through their deliberate indifference and callous disregard, allowed inmates to embezzle money from Plaintiff's trust account.  (ECF No. 48, at 8-9.)  "An individual's property is a fundamental example of a protected interest." *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015). "More specifically, [t]here is no question that [an inmate's] interest in the funds in his prison account is a protected property interest." *Id.* (quoting *Quick v. Jones*, 754 F.2d 1521, 1522 (9th Cir. 1985)).  Plaintiff's trust account funds are within the scope of the Fourteenth Amendment.

Private Information.  In Claim 2, Plaintiff alleges that Defendant Buechter acted with deliberate indifference and callous disregard in his supervisory duties to

maintain security over the information in inmate accounts. (ECF No. 48, at 9.)

Although the funds in an inmate trust account are a protectable property interest,

information about such accounts are not a recognized interest. *See Kimberlin v.*

*United States Dep't of Justice*, 788 F.2d 434, 438-39 (7th Cir. 1986) (rejecting due

process claim for probation officer's disclosures regarding transfer of funds from

inmate account because "[t]he only cognizable property interest at stake here is the

loss of the money or the use of the money in the commissary account.").

Appeal Process. In Claim 4, Plaintiff alleges that Defendant Stratman by his

deliberate indifference and callous disregard caused pages of Plaintiff's 602 appeal

to be lost, thereby thwarting Plaintiff's ability to seek third level review of his

appeal. (ECF No. 48, at 10.) However, inmates do not have a "separate

constitutional entitlement to a specific prison grievance procedure." *Ramirez v.*

*Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that because the processing of

appeals in a prison grievance system is not a liberty interest for purposes of the

Fourteenth Amendment Due Process clause, the actions of prison officials in

reviewing a prisoner's internal appeal cannot create liability under Section 1983);

*see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (Prisoners do not have a

"legitimate claim of entitlement to a grievance procedure.").

Credit Cards. In Claim 5, Plaintiff contends that Defendant Williams by his

deliberate indifference and callous disregard allowed mailroom staff to steal

Plaintiff's cards. (ECF No. 48, at 10.) However, the 4AC states that the credit

cards were classified as contraband. (*Id.*). An inmate does not have a protected

property interest in possessing contraband while in prison. *Steffey v. Orman*, 461

F.3d 1218, 1221 (10th Cir. 2006); *Lyon v. Farrier*, 730 F.2d 525, 527 (8th Cir.

1984); *Knight v. Yarborough*, No. CV 03-01210-AG (VBK), 2011 U.S. Dist.

LEXIS 113710, at *54, 2011 WL 4550190, at *18 (C.D. Cal. Aug. 22, 2011)

("Inmates do not have a constitutional right to keep, or to dispose of contraband

materials as they wish.").

### b. Procedures.

Although the 4AC alleges a protected property interest (the money in Plaintiff's inmate trust account), Plaintiff's due process claim fails because neither the negligent nor intentional deprivation of an inmate's property gives rise to a claim under Section 1983 when adequate and meaningful post-deprivation remedies for the losses are available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). California law provides an adequate post-deprivation remedy for any property deprivations caused by public officials. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (holding that inmate failed to state a claim under Section 1983 for deprivation of property because California law provides an adequate post-deprivation remedy for property deprivations) (citing Cal. Gov't Code §§ 810-95, the Government Claims Act). Whether Plaintiff succeeds in redressing his or her alleged loss through the available state remedies is immaterial; it is the existence of the alternative remedies that bars him or her from pursuing a Section 1983 procedural due process claim. *Willoughby v. Luster*, 717 F.Supp. 1439, 1443 (D. Nev. 1989).

For these reasons, Plaintiff's Fourteenth Amendment Due Process claim fails. If Plaintiff files an amended complaint with a Due Process claim, he must correct these deficiencies or risk dismissal of this claim with prejudice.

### 3. The 4AC Does Not State a Fourteenth Amendment Equal Protection Claim.

"The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Angelotti Chiropractic v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015) (quoting U.S. Const. amend. XIV, § 1) (alteration in original). "The Equal Protection Clause requires the State to treat all similarly situated people equally. This does not mean, however, that all prisoners must receive identical treatment and

resources." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citations omitted).

To state an equal protection claim, a claimant "must allege facts plausibly showing that 'the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class.'" *Id.* (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (alteration in original); *see also New Orleans v. Dukes*, 427 U.S. 297, 303 (1975) (noting that "suspect distinctions such as race, religion, or alienage" are protected classes for equal protection purposes). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994)). Prisoners are not a suspect class for equal protection purposes. *See Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999). If the action does not involve a suspect classification, the plaintiff must show that similarly situated people intentionally were treated differently without a rational basis for the disparate treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, the 4AC fails to state an equal protection claim because it includes only a conclusory request for a declaration that Plaintiff has an equal protection right to be protected from identity theft and fraud. (ECF No. 48, at 14.) The 4AC does not allege facts to support the reasonable inference that either: (1) Plaintiff is a member of a protected class and any Defendant intentionally treated Plaintiff differently from any other inmate because of his membership in that protected class; or (2) any Defendant intentionally treated Plaintiff differently from other inmates without a rational basis for the disparate treatment. If Plaintiff files an amended complaint with an Equal Protection claim, he must correct these deficiencies or risk dismissal of this claim with prejudice.

//

//

### 4. The 4AC Does Not State a Section 1983 Conspiracy Claim.

A conspiracy claim involving Section 1983 requires allegations supporting "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (quoting *United Steelworkers of Am.*, 865 F.2d at 1541). This agreement or meeting of the minds may be inferred on the basis of circumstantial evidence, such as the actions of the defendants. *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999). A showing that defendants committed acts that "are unlikely to have been undertaken without an agreement" may support the inference of conspiracy. *Id.* Conclusory allegations of conspiracy to violate Constitutional rights are insufficient to state a Section 1983 claim. *See Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). In addition, a conspiracy to violate constitutional rights must be predicated on a viable underlying constitutional claim. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005). The claim requires "an actual deprivation of constitutional rights." *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006).

The 4AC does not sufficiently state a conspiracy claim because it does not allege specific facts of an agreement or meeting of the minds to violate Plaintiff's constitutional rights, or any deprivation of constitutional rights. Without any supporting facts, the 4AC simply alleges that Defendants engaged in a "fraudulent scheme" and "conspired." (*See, e.g.*, ECF No. 48, at 2.) "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns*, 883 F.2d at 821. If conspiracy allegations are included in an amended complaint,

//

Plaintiff must correct these deficiencies or risk dismissal of this claim with prejudice.

### E.     The 4AC Does Not State a Tort Claim Under California Law.

To the extent Plaintiff intended to assert pendent claims under California law—*e.g.*, fraud, conversion, and/or negligence—the 4AC fails to allege compliance with the government presentation requirements under California law.

Before commencing a lawsuit against a California state or local public entity or its employee based on tort liability or for any claim for money or damages, the Government Claims Act requires a plaintiff to first present a written claim to the public entity. *See Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 374 (2014); *see also City of Stockton v. Superior Court*, 42 Cal. 4th 730, 738 (2007). Claims for personal injury and property damages must be presented within six months after accrual; all other claims must be presented within one year. *City of Stockton*, 42 Cal. 4th at 738. A plaintiff cannot file a lawsuit until the written claim has been acted upon, or deemed rejected, by the board of the public entity. *State of California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 (2004). "[S]ubmission of a claim to a public entity pursuant to [the Government Claims Act] 'is a condition precedent to a tort action and the failure to present the claim bars the action.'" *Id.* at 1240 (quoting *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 708 (1989)); *see also Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (holding that plaintiff's pendent state law tort claims against both the individual and public entity defendants are barred unless he presented them in compliance with Government Claims Act before filing suit). "A cause of action that is subject to the statutory claim procedure must allege either that the plaintiff complied with the claims presentation requirement, or that a recognized exception or excuse for noncompliance exists." *Gong*, 226 Cal. App. 4th at 374; *see also Bodde*, 32 Cal. 4th at 1243 ("[A] plaintiff must allege facts demonstrating or

excusing compliance with the claim presentation requirement. Otherwise, his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action.").

The 4AC does not allege that Plaintiff presented any potential state claims in compliance with the Government Claims Act, or that he was excused from the claim presentation requirement. Thus, the 4AC does not sufficiently plead any state law claims. If Plaintiff intends to include any state law claims in any amended complaint, he must state facts showing that he presented or was excused from presenting his claim in accordance with the Government Claims Act.

## V. CONCLUSION

For the reasons stated above, the Court **DISMISSES** the 4AC **WITH LEAVE TO AMEND**. Plaintiff is **ORDERED** within thirty days after the date of this Order to either: (1) file a Fifth Amended Complaint ("5AC"), or (2) advise the Court that Plaintiff does not intend to file a 5AC.

The 5AC must cure the pleading defects discussed above and shall be complete in itself without reference to the 4AC. *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits. The amended pleading shall not refer to the prior, superseding pleading."). This means that Plaintiff must allege and plead any viable claims in the 5AC again. Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the 4AC.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should identify the

nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a 5AC, or timely advise the Court that Plaintiff does not intend to file a 5AC, will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

If Plaintiff no longer wishes to pursue this action in its entirety or with respect to particular Defendants, he voluntarily may dismiss this action or particular Defendants by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). **A form Notice of Dismissal is attached for Plaintiff's convenience.**

Plaintiff is advised that this Court's determination herein that the allegations in the 4AC are insufficient to state a particular claim should not be seen as dispositive of the claim. Accordingly, although the undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or Defendant in order to pursue this action. However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the undersigned ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to

//

//

state a claim, subject to Plaintiff's right at that time to file objections. *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

**IT IS SO ORDERED.**

DATED: <u>March 22, 2019</u>

 

 

 

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE